[No. 1670.]

THE JUMBO MINING COMPANY OF GOLDFIELD, A CORPORATION, PETITIONER, v. THE DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF ESMERALDA, AND THE HON. M. A. MURPHY, JUDGE OF SAID COURT, RESPONDENTS.

1. CERTIORARI—DISMISSAL—GROUNDS. *Certiorari* to review the action of the district court in granting an injunction and appointing a receiver will be dismissed where, pending its disposition, the district court has dissolved the injunction and discharged the receiver, although its action in so doing was based on erroneous grounds, and it did not consider or determine the questions raised on *certiorari*.

2. SAME. Where, pending the disposition of a *certiorari* to review an order of the district court issuing an injunction and appointing a receiver, the district court dissolved the injunction and discharged the receiver, the fact that it erroneously awarded costs against the petitioner for the *certiorari*, was not ground for the retention of the writ, as its action in so doing was subject to appellate review.

ORIGINAL PROCEEDING. *Certiorari* by the Jumbo Mining Company of Goldfield, a corporation, to review the proceedings of the District Court of the First Judicial District, Hon. M. A. Murphy, Judge, in appointing a receiver and issuing

an injunction in a certain action. On order to show cause why the proceedings should not be dismissed. **Dismissed.**

The facts sufficiently appear in the opinion.

*John Garber*, for Petitioner:

I. The bill of complaint in the suit in which the receiver was appointed alleges substantially the following facts: That the board of directors of the corporation authorized its general manager to dispose of certain portions of surface of the mining ground of the company, reserving all mining rights, and that under said authority said manager has sold certain town lots without accounting for the proceeds, thereby interfering with the proper and economical mining of that portion of the mining ground. (2) That one of the defendant directors caused one end line of the Jumbo mining claim to be drawn in, and located the part so left out in his own name and holds the same adversely to the corporation. (3) That the defendant directors hold 421,000 shares of the stock of the corporation, and the plaintiff directors 87,000 shares. (4) That H. L. Taylor is a brother of C. D. Taylor and under his control and direction, and McClelland has been intimidated by C. D. Taylor and is under his control, and that C. D. Taylor has held the office of general manager for the purpose of deriving advantages and to the injury of the corporation, and to that end said C. D. Taylor, George McClelland, and H. L. Taylor have conspired to oust the plaintiff directors, who have been so removed by a vote of less than three-fifths of the stock voting at a stockholders' meeting held for that purpose, whereas by the constitution of the corporation it required a three-fifths vote to effect such removal. (5) That after such removal their places were filled by appointing Holt and Robinson, and since that time the ousted directors have been denied all right of participating in the actions of the board of directors. (6) That the company's mines are rich and productive, and there is now nearly $100,000 in the treasury.

The foregoing is the substance of all the facts alleged. Indeed, to say this is conceding too much, for some of the

allegations are baldly and clearly mere conclusions and inferences, and so may well be disregarded; for example, the statement that Taylor held his position for improper purposes and that some of the directors were under the control of another of them. (*Mulcahy* v. *Hibernia*, 77 Pac. 910.)   The complaint contains also the statement of an inference or conclusion of the pleader that the · corporation has two rival boards of directors, which will be in conflict, and that a receiver is necessary.   These are not only mere inferences or conclusions, but are not supported by, and in fact are inconsistent with, the facts alleged.   From these facts the only inference must be that there was but one *de facto* board of trustees in full possession and use of their office, and with full possession of all the property of the corporation.   There is not one averment of fact showing any fraud, conspiracy, or mismanagement.   It is not stated that any of the defendants are solvent, nor is any fact or circumstance alleged even tending to show any danger of loss or mismanagement, or any necessity or propriety for the drastic remedy of a receivership.   It is scarcely necessary to cite authority to show that mere epithets or charges of conspiracy cannot supply the place of averment of fact in a pleading.. (*Olds* v. *Chicago Board of Trade*, 18 Ill. App. 465; *Trimble* v. *American Sugar Refining Co.*, 48 Atl. 914; *Winchester* v. *Howard*, 136 Cal. 432; *Hardt* v. *Heidweyer*, 152 U. S. 547–561; *Lumley* v. *Wabash*, 71 Fed. 27–28; *Ambler* v. *Choteau*, 107 U. S. 586; *Fogg* v. *Blair*, 139 U. S. 118.)   The case presented to the respondent court was, therefore, we respectfully submit, an *ex parte* application for the appointment of a receiver on a bill the gravamen of which was an assertion that a minority of its directors were only such *de facto* and not *de jure*.

We further submit that, consequently, to sustain the jurisdiction challenged in this proceeding before your honors, the respondent must successfully maintain two propositions: First, that in this state courts of equity have an inherent power to appoint receivers of corporations in the absence of any statutory grant of such power; and, second, that such power can be exercised in a suit instituted for the sole purpose of declaring invalid the election or appointment of a

minority of the governing body of the corporation—in a suit in which the only relief prayed for and the only final decree which can be rendered is the ousting of the *de facto* claimants and the seating of those contesting their election or appointment. We submit that neither upon principle nor authority can either one of these propositions be even plausibly maintained.

In such great commercial states as New York and California, it is, we think, well settled that power of courts of equity to appoint receivers of corporations is purely statutory; and the opinions in these cases fully vindicate, on principle, a rule which in practice for many years has justified itself in the practical workings of the vast corporations affected by it. In the case of *Atlas Iron Construction Co.*, 38 N. Y. Supp. 172, it is said: "It has been the settled law of this state, for many years, that chancery has no jurisdiction over corporations, either on common-law principles, or through its general equitable powers, and that it is only by the statute, and for particular causes there enumerated, that the court acquires jurisdiction." (*In re Binghampton*, 143 N. Y. 263; *Howe* v. *Deuel*, 43 Barb. 507; *Belmont* v. *Erie*, 52 Barb. 668; *Gardner* v. *London*, 2 Chy. App. 201.)

In California the French Bank case, 53 Cal. 495, is a leading case, and one, we submit, entitled to peculiar consideration, owing to the similarity of conditions and statutes between California and Nevada, and the ability of the court and counsel by whom it was argued and considered and the frequent endorsement it has received when cited in other jurisdictions, and the thoroughness with which the subject was treated and the cogency of the argument. It will not be attempted in this presentation, which is necessarily and designedly made as brief as possible, to repeat the reasoning of these cases. Suffice that in the opinions we cite the whole subject is fully elaborated. In this behalf, we cite one example out of many showing that it is recognized, not only in New York and California, but everywhere, that a receiver can only be appointed "as a measure ancillary to the enforcement of some recognized equitable right" (*Vita* v. *Grand Island*, 94 N. W. 138), and see the same case on

rehearing reported in 97 N. W., where the subject is again elaborately treated. Now, then, to what recognized equitable right can this receivership be held · auxiliary—what final decree does the bill pray. or justify as an adjunct of which it can find support? The only possible answer is a decree settling a disputed claim to the office of a minority director preferred by an ousted director against a *de facto* incumbent in the exercise of the office. As to the prayer that certain acts of the *de facto* board be declared null, and certain suits be enjoined, it is enough to say that the receivership is in no possible way ancillary or called for.

With or without a receiver, such a final decree would be equally operative. Moreover, no such decree could be rendered on the allegation of the bill, for it confesses the existence of a duly qualified majority, fully competent to act. To such a decree the receivership is in no way ancillary, but is self-evidently utterly futile and inefficacious as an aid to such a decree. In view of such a decree, it is a misnomer to speak of the receivership as ancillary, or as a means. It can be nothing but an end, and must stand independently, and can only be sustained by asserting that a,bill filed simply for a receivership will lie. But no such decree can be rendered. The court had no jurisdiction to entertain a suit for any such purpose. If the plaintiff directors were improperly ousted or their successors improperly elected, a court of equity is not the forum in which to redress the wrong. It has most emphatically no jurisdiction of any such controversy. (Cook on Stock and Stockholders and Corporation Laws, 2d ed., sec. 746, p. 977; *Bayless* v. *Orne*, 1 Freeman Chy. (Miss.) 176; *Supreme Lodge* v. *Simmering*, 88· Md. 276; 40 Atl. 723; *Bedford Springs* v. *McMeen*, 161 Pa. St. 639; *Mosely* v. *Alston*, 1 Phil. Ch. 790; *Neall* v. *Hill*, 16 Cal. 145; *Perry* v. *Tuscaloosa*, 93 Ala. 364; *New England Mutual* v. *Phillips*, 141 Mass. 535; 76 Am. Dec. 515.)

*Key Pittman* and *Vermilyea & Bartlett*, for Respondents:

I. Review upon *certiorari* extends only to the question whether the inferior tribunal has kept within its jurisdiction, and mere errors not involving any excess of authority will

not be inquired into. (*In re Wixom*, 12 Nev. 222; 2 Nev. 313; 5 Nev. 317; 6 Nev. 100; 7 Nev. 372; 8 Nev. 359; 9 Nev. 382; 11 Nev. 213; *State* v. *District Court*, 23 Nev. 243.)

II.   Distinction between error of judgment and usurpation of power.   (*Wilson* v. *Morse*, 25 Nev. 376.)

III.   The ultimate object of the action is to establish a legal and properly constituted board of managers for the defendant corporation.   The equity power of the court is only invoked to preserve the property pending the determination of such question.   It is in the nature of a proceeding in *mandamus*, and the facts alleged in the complaint would sustain such writ.   But one form of civil action. (Comp. Laws, 3096.)

IV.   Inherent power of courts of equity to appoint receivers. (Beech on Receivers, 454–456; 5 Thomp. sec. 6854.)

V.   Courts of equity have power to appoint a receiver for a corporation, either because it has no properly constituted governing body, or because there are such dissensions in the governing body as to make it impossible for the corporation to carry on its business with advantage to the stockholders. (Beech on Receivers, p. 100; Waterman on the Law of Corporations, vol. 2, par. 356; 5 Thomp. on Corp. sec. 6878; *Featherstone* v. *Cooke* and *Trade Aux. Co.* v. *Vickers*, 16 L. R. Eq. 298; *Lawrence* v. *The Greenwich Fire Insurance Co.*, (N. Y.) 1 Paige's Chan. Rep. 587; *Einstein* v. *Rosenfeld*, 38 N. J. Eq. 309; *Edison* v. *Edison United Phonograph Co.*, 29 Atl. 195; *State* v. *Independent Dist. Tel. Co.*, 39 Pac. 316.)

VI.   Officers *de facto* as distinguished from usurpers.   In order to make a person officer *de facto*, he should in some way have been put into the office and have secured such a holding thereof as to be considered in peaceable possession and actually exercising the functions of an officer; and intrusion by force is not sufficient. (*State* v. *Curtis*, 9 Nev. 326.)

VII.   Our courts have jurisdiction over foreign corporations. (3 Nev. 181; *State* v. *Cronan*, 23 Nev. 437.)

VIII.   A receiver may be appointed without notice. (*Maynard* v. *Railey*, 2 Nev. 313.)

*Campbell, Metson, Jackson & Brown,* for Petitioner:

I.   It will be readily seen by an inspection of the record in this case that the petitioner did not obtain by the decision of the case in the district court the relief which he prayed for by the petitions in the cases now pending before this court. The record shows that in an action between stockholders and petitioner, the Jumbo Mining Company, the court did appoint a receiver, and that the receiver did take charge of the property of the corporation.   While it is true upon a final hearing of the cause that the court did discharge the receiver at the cost of this petitioner, this return shows that the receiver now claims $10,000 as his claim for compensation.   It is the claim of petitioner in his petitions that the court had no jurisdiction, power, or authority to appoint a receiver in an action between stockholders, even in a domestic corporation.   This is denied absolutely by the decision and judgment of the district court.   It is further claimed that the court had no jurisdiction to interfere in the internal affairs of a foreign corporation by appointing its officers to take charge of the affairs of said foreign corporation, deprive the stockholders of all the rights and powers guaranteed to them by the sovereign power of a foreign state or territory, and thus deprive them of the right to manage and control their own property by and through agents of their own choosing, which right is property, and to deprive them of the same without authority of law is to take away from them their property without due process of law, in violation of the constitution of the United States.

II.   The question argued and submitted to this court was the plain, unvarnished question:   Are the orders made and entered by the court of the first judicial district void by the reason of the fact that they were made in excess of or without the jurisdiction of the court making them?   We respectfully submit that nothing decided by the court touches that point.   It is true that upon the final hearing and after said receiver had possession and charge of the property of the petitioner for a period of four months or thereabouts, the court did, upon rendering final judgment, discharge the receiver,

but it was not upon the grounds that he had no jurisdiction to appoint him, but for the reason that the alleged facts upon which he was appointed were not true, and were unfounded in fact. But that order discharging him was coupled with the order that petitioner, the Jumbo Mining Company, pay all the costs of the proceeding, which costs, including the receiver's claim, greatly exceeded $10,000. The order to show cause, issued by this court upon the 14th day of March, 1905, recites as follows: "Information having come to the justices of this court that the trial court in the above-entitled cause has already granted to the petitioner the relief prayed for in its petition," etc. The relief prayed for in the petition was that the order of the trial court be declared null and void as having been made without and in excess of jurisdiction. The relief alleged to have been granted was the discharge of the receiver upon the grounds that the allegations of the pleadings upon which he was appointed, and which was the foundation of his appointment, were untrue. But said order being made upon condition that the petitioner pay all the cost, not only of the proceedings, but of the receiver also, the effect of said judgment is "I adjudge that you pay a certain sum of money as costs to the receiver, but I also discharge him"—not set aside and dissolve the order appointing him.

It may not be amiss to call the court's attention again to some of the salient facts in this cause: (1) It will always be kept in view that this petition is made by the Jumbo Mining Company; (2) In the original suit in which the receiver was appointed it was alleged by complainants that the Jumbo Mining Company was being and had been despoiled of its property by the fraudulent acts of one of its directors, C. D. Taylor; (3) That three of the five directors of the Jumbo Mining Company had conspired together to oust the complainants from the directory of said company, and had done so; that a receiver was necessary to protect the property of the Jumbo Mining Company from the fraudulent acts of certain of its directors. It was not alleged in said bill of complaint that the corporation by and through its officers or some of them was doing or performing any corporate act whereby

any of the complainants or the corporation or any of its property was being or had been injured. The entire basis of the suit was that three of the officers of the corporation, as individuals, were committing and permitting fraudulent and injurious acts upon the complainants, and upon the corporation. The corporation itself was alleged upon the one side, and admitted upon the other, to be an innocent entity, having no part or lot in any of the transactions whatever, but being thus innocent it needed and required the protection of the court in the person of one of its officers (a receiver) to protect it from the wrongful invasion of its property rights by its own officers. Thus the matter was presented upon the pleadings in the court below. The cause was tried upon the merits as presented; the receiver was discharged. But the costs—that was the question. The court did not tax them against the complainants for wrongfully bringing the suit or failing to substantiate it after being brought.

III. We wish to call the attention of this court particularly to the fact that in appointing this receiver, the District Court of the First Judicial District of Nevada violated the constitution of the United States, and deprived the corporation (petitioner) and its stockholders of their property, without either authority or due process of law.

*Per Curiam:*

In this proceeding this court, on the 23d day of November, 1904, issued a writ of *certiorari* directed to the above-named respondents, requiring that there be certified to this court for review the proceedings had before the said Hon. M. A. Murphy, as Judge of the said First Judicial District Court of the State of Nevada in and for the County of Esmeralda, in a certain action pending in said court wherein John McKane and George A. Kernick were plaintiffs and C. D. Taylor, George E. McClelland, H. L. Taylor, C. P. Holt, Thos. Robinson, and the petitioner herein, the Jumbo Mining Company of Goldfield, were defendants, in which action petitioner herein alleged that certain orders made therein appointing a receiver for petitioner herein and issuing an injunction restraining certain of said defendants from per-

forming certain acts relative to the management of the affairs of said defendant corporation, petitioner herein, were and are beyond the jurisdiction of said court, and therefore void. The writ was duly returned, and thereafter the legal questions involved were argued, and submitted to this court for its decision.    Thereafter, information having come to the justices of this court that the trial court in the aforesaid action had already granted to the petitioner the relief prayed for in its petition, this court made an order directing the parties to this proceeding to appear at a time therein named to show cause why this proceeding should not be dismissed. Counsel for petitioner answered by filing a copy of the decision of Judge Murphy in said action, and also a copy of the return or final account of the said receiver, filed in pursuance of the said decision of Judge Murphy, together with a brief in opposition to a dismissal of this proceeding.

From the decision of Judge Murphy, filed by petitioner herein, we quote the following:    "It is further ordered that the injunction heretofore issued against C. D. Taylor, H. L. Taylor, and George E. McClelland and the Jumbo Mining Company be dissolved.    It is further ordered, adjudged, and decreed that within twenty days after the filing of this opinion John S. Cook, the receiver heretofore appointed by this court, pay all claims contracted by him as such receiver for and on behalf of the Jumbo Mining Company, and pay the same out of any money he may have in his possession belonging to the said Jumbo Mining Company;    *   *   *    that he shall also make out and file with the clerk of this court a true and correct account of his receipts and disbursements while acting as such receiver for said company, together with a claim for his own services to be presented and allowed by this court; that he shall also pay out of the funds of the Jumbo Mining Company the costs in this court, and when he has complied with these orders, and his said account has been allowed and approved by this court, he will surrender to the Jumbo Mining Company all property belonging to said company of whatsoever kind and character the same may consist, taking its receipt therefor, and file the same in this court, and when so filed the said receiver shall be relieved from

any further liability as such receiver, and his bondsmen be released from any further liability to be thereafter incurred."

From the brief of petitioner filed in response to the order of this court we quote the following portions as showing the reasons contended for by counsel for petitioner why this court, regardless of the decision of Judge Murphy, should not dismiss this proceeding: "The question argued and submitted to this court was: Are the orders made and entered by the court of the first judicial district void by reason of the fact that they were made in excess of or without the jurisdiction of the court making them? We respectfully submit that nothing decided by the court touches that point. It is true that upon the final hearing, and after said receiver had possession and charge of the property of petitioner for a period of four months or thereabouts, the court did, upon rendering final judgment, discharge the receiver; but it was not upon the ground that he had no jurisdiction to appoint him, but for the reason that the alleged facts upon which he was appointed were not true, and were unfounded in fact. But that order discharging him was coupled with the order that petitioner, the Jumbo Mining Company, pay all the costs of the proceeding, which costs, including the receiver's claim, greatly exceed $10,000. * * * The relief prayed for in the petition was that the order of the trial court be declared null and void, as having been made without and in excess of jurisdiction. The relief alleged to have been granted was the discharge of the receiver upon the grounds that the allegations of the pleading upon which he was appointed, and which was the foundation of his appointment, were untrue. But said order being on condition that the petitioner pay all the costs, not only of the proceedings but of the receiver also, the effect of such judgment is, 'I adjudge that you pay a certain sum of money as costs to the receiver, but I also discharge him,' not set aside and dissolve the order appointing him."

From the argument of counsel for petitioner it will be manifest that two reasons are urged why this court should not dismiss this proceeding, but should pass upon the merits of the questions originally presented. The first one is, in

effect, that the lower court did not dissolve the injunction and discharge the receiver upon the ground of want of jurisdiction to make the orders, but because the alleged facts upon which the original orders were made were not sustained by the evidence; and, second, because the court, in discharging the said receiver, has imposed the burden of his fees upon petitioner herein, an innocent party. We think neither of these grounds affords a sufficient reason why this court should, in this extraordinary proceeding, now pass upon the questions argued upon the submission of this cause upon its merits. The relief prayed for to the extent of dissolving the injunction and ordering the discharge of the receiver has been granted. Whether such relief was granted upon correct or erroneous grounds, so far as this proceeding is concerned, the effect is the same. (*Conley* v. *Chedic*, 6 Nev. 222.) Conceding, for the purposes of the argument, that the appointment of the receiver was in excess of the jurisdiction of the court, and therefore void, ought this court to determine that fact in this proceeding in order to pass upon the question of the receiver's fees, claimed to be taxed as costs against petitioner? We think not. While it does not clearly appear from the decision of Judge Murphy that the fees of the receiver have been or are to be taxed against the petitioner, nevertheless, if they are, and the same is erroneous, the petitioner has a plain, speedy, and adequate remedy by appeal, for this court will modify or set aside void as well as erroneous judgments or orders upon the error being properly presented to this court. (*Hastings* v. *Burning Moscow Co.*, 2 Nev. 97.)

For the reasons given, it is ordered and adjudged that the proceedings in this court be dismissed.